UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BETSY GREGSON | § | |
| | § | |
| VS. | § | |
| | § | CASE NO. _____ |
| CITY OF HUNTINGTON, | § | |
| ANDY SPIVEY AND | § | |
| INA CARDWELL | § | |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Betsy Gregson, files Plaintiff's Original Complaint, complaining of the City of Huntington, Andy Spivey, and Ina Cardwell, Defendants.

PARTIES

1. Plaintiff Betsy Gregson, is an individual residing in Angelina County, Texas and is appearing in court through her attorney of record.

2. Defendant, the City of Huntington, may be served through Mayor Herman Woolbright at 802 Hwy. 69 South, Huntington, Texas 75949.

3. Defendant Andy Spivey may be served at 802 Hwy. 69 South, Huntington, Texas 75949.

1

4. Defendant Ina Cardwell may be served at 802 Hwy 69 South, Huntington, Texas 75949.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to federal question, 28 U.S.C. § 1331. This Court can also exercise jurisdiction over the pendant state law claims.

## BACKGROUND FACTS

6. Betsy Gregson was employed by the City of Huntington (Huntington) as the Assistant City Secretary. She began employment on September 13, 1998. In May, 2013, two city council members, Andy Spivey and Ina Cardwell, told Gregson and others that Huntington had to terminate Gregson, because she was "too old." They said, "That old lady needs to go." Furthermore, these council members proposed changes to the city's benefit package for the specific purpose of having an adverse effect upon Gregson and forcing her early retirement. On May 28, 2013, these council members placed Gregson on the agenda for a disciplinary issue, and Ina Caldwell asked her to resign that night. Plaintiff refused to do so. Subsequently, Gregson fell at work injuring herself, and as a result she has and is still receiving worker's compensation benefits.

7. The history of discrimination perpetrated by the Defendants against Gregson is extensive. At the time of her wrongful termination, Gregson had originally planned on working an additional three (3) years, and she discussed those plans with the city administrator and also Mayor Woolbright. Ina Caldwell, however, persistently sought to have Gregson fired. Caldwell falsely accused Plaintiff of embezzling money from Huntington. Ina Caldwell and Andy Spivey both stated that they were going to "clean house," and that meant terminating Gregson for illegal reasons. On February 26, 2013, Andy Spivey kept referring to Gregson as the "old lady" during a city council meeting. Plaintiff complained to Mayor Woolbright, who did not take any remedial measures.

8. On April 5, 2013, Andy Spivey confronted Gregson at another council meeting, accusing her of doing something inappropriate. Gregson complained again to Mayor Woolbright about being targeted by Andy Spivey and Ina Cardwell, but the Mayor did not take any remedial measures.

9. On May 16, 2013, Gregson was in charge of airing out election boxes after an election. These boxes were heavy, metal boxes. When Gregson went to the front door to open it in order to move the boxes out the

building, the weight of the boxes caused her to fall through the door landing on her right side and hurting her knee, wrist, hip, and right shoulder. Since Gregson could not get up, she was taken to Urgent Care. X-rays confirmed a broken shoulder, and she was placed into a splint. Gregson subsequently had an MRI demonstrating a torn rotator cuff in her shoulder. As a result, the doctor ordered Gregson to be placed on light duty. Although Plaintiff was on light duty, the council members Andy Spivey and Ina Cardwell increased Gregson's workload, trying to force her into retirement. For example, Gregson was ordered by her doctor not to use a keyboard due to her injuries, but Andy Spivey and Ina Cardwell ensured that Gregson had significant amounts of keyboarding work. These council members refused to obey the doctor-ordered work restrictions due to her medical condition, and instead they punished her for her medical condition in order to try to force her retirement.

10. As a result of all this harassment, discrimination and pressure, Gregson turned in her retirement letter on May 20, 2013. This was a constructive discharge. When Gregson turned in her retirement letter, she set a date for her retirement for August 30, 2013. This was done in order to permit Gregson to reach a next higher level of vesting for her

benefits, and also to give her time for training her replacement. Gregson would not have submitted her retirement, but for the discrimination, harassment and retaliation against her by the Defendants that caused this constructive discharge.

11. Although Gregson wanted to continue to work until August 30, 2013, the Defendants sought to terminate her employment sooner. On May 28, 2013, the council members Spivey and Cardwell, decided to seek discipline against Plaintiff for alleged insubordination. The city council held a meeting in a closed session, and Ms. Cardwell and Mr. Spivey wanted a reprimand to be placed in Gregson's file. The Mayor blocked this action, stating there was no basis to place a reprimand in Plaintiff's job file. The Mayor also told Gregson that she had to try to get along with Mr. Spivey and Ms. Cardwell, notwithstanding that they publicly referred to her as the "old lady" who "needed to go." Both Andy Spivey and Ina Cardwell claim that Plaintiff needed to be reprimanded because somehow Gregson must have offended them due to her age. Ms. Cardwell repeated on May 28, 2013, her demand that Gregson be terminated immediately, and not be permitted to stay until August. Ms. Cardwell then approached Jimmy Castles, the City Attorney, to determine whether Gregson had actually

earned her right to collect six (6) months sick leave if she remained in employment until May 20, 2013. Jimmy Castles confirmed that Gregson was entitled to this sick leave if she remained in employment. Ms. Cardwell and Andy Spivey reacted to that news by getting very upset and again stating that "old lady needs to go" before August 30, 2013, in order to prevent her from collecting the six (6) month sick leave benefit.

12. On May 29, 2013, Andy Spivey and Ina Cardwell called an emergency meeting to appoint an interim city administrator. During this meeting, they spoke again about the need to fire Gregson because of her age.

13. On May 30, 2013, Andy Spivey and Ina Cardwell came into Gregson's office, and asked her to place an item on the Emergency Meeting Agenda. It was one item, and it was a vote for a "no confidence" for Gregson, which would require her immediate termination if passed.

14. At this point, Gregson had enough. On May 30, 2013, she filed a claim with the EEOC for age discrimination and disability discrimination under the Americans with Disabilities Act. Furthermore, Plaintiff began to suffer from extreme stress, resulting in high blood pressure and other physical manifestations due to the discrimination and harassment against

her.

15. On June 3, 2013, Gregson turned in a doctor's note and informed Huntington that she was required medically to be off work for two weeks. Ina Cardwell knew that Gregson was already on light duty because of her shoulder and recent injuries. In response, Ina Cardwell refused to recognize Gregson's medical leave for two (2) weeks, and Cardwell also continued to try to overload Gregson with additional work, in retaliation.

16. On June 3, 2013, Gregson received notification that her claim had been filed with the EEOC. In response, Hungtington City Council held a meeting on June 6, 2013, in order to place Gregson's termination on the agenda. The City Council did this after it received notice from the EEOC earlier in the day, and the City Council took the EEOC notice to attorney Jimmy Castle when the City Council received it. In response, they called a Special Council meeting at 5:00 p.m. on June 6, 2013. This occurred in a closed session. Then, the Defendants posted a notice for a Special Meeting on Friday, June 7, 2013, in order to fire Gregson for filing her EEOC charge.

17. This posting on June 7, 2013, called for a Special Meeting within 72 hours for the specific purpose of removing or terminating Plaintiff's

employment. On June 11, 2013, Huntington fired Gregson.

18. Even though the Defendants wrongfully terminated Plaintiff, they were not done harassing and humiliating her. For example, Gregson had served as a volunteer on the Huntington Economic Development Board (EDB) for the past fifteen (15) years. The Defendants sought to have her removed from the EDB Board, but they were surprised to find out that Gregson was a volunteer and not an employee. As such, the Defendants posted a notice for a special meeting with a special agenda item on June 25, 2013, seeking Gregson to be removed from the EDB Board.

CAUSES OF ACTION

19. Plaintiff asserts several causes of action. Plaintiff is suing the Defendant the City of Huntington for violation of the Federal Age Discrimination and Employment Act of 1967, 29 USC § 621 ("ADEA"). The ADEA prohibits employment discrimination against persons 40 years of age or older. The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against, and unlawful to create a hostile work environment against, an individual with respect to his or her compensation, terms, conditions, or privileges of employment because of the individual's age. In this case, the Defendant City of Huntington

overtly and repeatedly discriminated against Plaintiff on the basis of her age. On the basis of her age, Huntington repeatedly and openly sought her termination from employment. Gregson's age was definitely a substantial motivating factor in Huntington's decision to terminate her employment. Also, Huntington caused a hostile work environment for Gregson. As a result of Huntington's unlawful conduct in violation of the ADEA, Gregson has sustained actual or compensatory damages, discussed below.

20. Plaintiff also sues the Defendant City of Huntington under the American's with Disabilities Act of 1990, as amended 42 U.S.C. § 126 (ADA). The ADA prohibits discrimination an employee on the basis of a disability whether it is a permanent disability or a temporary disability. Additionally, the ADA prohibits an employer from creating a hostile or adverse work environment for an employee based on a disability, whether that disability is permanent or temporary. Similarly, the ADA prohibits an employer from discriminating against an employee based upon the employee's or the employer's good faith belief or perception that the employee is disabled.

21. In this matter, the Plaintiff sustained an injury on the job which caused a temporary disability condition, or the perception that she was

disabled. Gregson was placed on light duty, and she was unable to perform certain aspects of her job, but was still able to perform the essential aspects of her job with a reasonable accommodation. Huntington, however, would not permit Gregson a reasonable accommodation for her temporary disability and/or the perception of her being disabled. In response to her condition, Huntington increased her workload, forcing Gregson to perform work that she was medically unable to perform, when performing that particular type of work was not part of her essential job functions and could have easily been done by others. Even with Gregson's condition, she was capable of performing light duty work in all the essential aspects of her job. Huntington, however, discriminated against Gregson for her condition, and caused her to sustain significant physical and mental pain, suffering and anguish due to Huntington's unlawful discrimination in violation of the ADA. Huntington also created a hostile work environment for Gregson. The Defendant's violation of the ADA caused Plaintiff substantial actual or compensatory damages as discussed below.

22.   Although Huntington went on a lengthy campaign to force Plaintiff into retirement prior to her planned retirement date, the Defendant

hastened its firing of Gregson because she filed an EEOC Charge of Discrimination. Huntington received Gregson's EEOC Charge of Discrimination on June 6, 2013. Two council members Spivey and Cardwell immediately planned Gregson's quick termination in retaliation for her filing an EEOC Charge of Discrimination. Spivey and Cardwell, on behalf of Huntington, immediately took the EEOC Charge to the city attorney Jimmy Castles, and Defendants sought a way to have her fired from employment because Gregson filed an EEOC Charge of Discrimination. This is called unlawful retaliation in violation of federal law. Huntington then terminated Plaintiff in a retaliatory fury due to her filing her EEOC Charge of Discrimination, and also based upon her age, and because of her disability or perception of a disability. The discrimination by the City of Huntington caused Plaintiff substantial actual or compensatory damages, as set forth below.

23. Plaintiff also sues Defendant Huntington for the pendant state law claim for its violation of Texas Labor Code § 451.001, which prohibits discrimination by an employer against an employee who files a worker's compensation claim in good faith, or who receives worker's compensation benefits. Section 451.001 prohibits an employer from discharging or in any

other manner discriminating against an employee when that employee has sought or obtained worker's compensation benefits. Under § 452 of the Texas Labor Code, Gregson is entitled to recover all "reasonable damages incurred by the employee as a result of the violation," as well as reinstatement.

24. In this case, Huntington overtly discriminated against Gregson for filing and obtaining worker's compensation benefits. She sustained a serious on the job injury, resulting in a broken shoulder and a torn rotator cuff, as well as damage to her wrist. Gregson was eligible to return to work on light duty, and she could perform her essential job functions on light duty. In response, however, Huntington forced her to perform job functions that Gregson was medically unable to perform, and Huntington increased her work load in those particular areas, solely in an attempt to harass, degrade, and discriminate against Gregson for her due to her job injury, and for all the reasons set forth above. The Defendant's violation of Texas Labor Code § 451.001 has proximately caused Plaintiff substantial actual or compensatory damages discussed below.

25. The discriminatory conduct of Huntington set forth above, caused Gregson to suffer a hostile work environment. Huntington's

discriminatory actions adversely affected the Plaintiff's terms, conditions, and privileges of employment, and caused her to dread going to work, due to the conspiracy to harm Gregson and discriminate against her. As a result, Gregson began suffering from high blood pressure, anxiety, fear, and other forms of substantial mental and emotional distress, with physical manifestations.

### Plaintiff's Damages

26. Accordingly, Gregson sues Defendant Huntington for her compensatory or actual damages that consist loss of enjoyment of life and mental anguish in the past, present, and into the future, due to all this unlawful conduct. Gregson seeks $300,000.00 for her non-pecuniary damages.

27. Plaintiff also sues Defendant Huntington for her compensatory or actual damages for loss of wages and benefits in the past up to the time of trial. Specifically, Gregson was earning $1,606.00 per week in wages. Gregson also obtained medical insurance, vision, dental, and life insurance. When she was wrongfully terminated, she lost all of her wages, as well as all her medical benefits. Gregson is currently paying $433.00 per month under COBRA for these insurance benefits. She was 61 years

old at the time of her termination. Since Defendant Huntington terminated her in advance of Gregson's original target date of August 30, 2013, Gregson lost $28,000.00 in benefits that she would have otherwise been entitled to recover.  Moreover, Gregson had set the retirement date of August 30, 2013, solely because she was being discriminated against and subjected to a hostile work environment resulting in a constructive discharge. Gregson wanted to remain in employment for a full additional three and one half years, so that Gregson could obtain a higher level of vesting for her retirement benefits. As a result of the Defendants' unlawful conduct discussed above, therefore, Gregson lost an additional $300.00 per month for the remainder of her life in retirement benefits. Gregson estimates that her total pecuniary losses up to the time of trial will be approximately $350,000.00.

28.     Pursuant to federal law and also Texas Labor Code § 451.002, Plaintiff also seeks reinstatement or front pay for a period of three and one half years. Plaintiff believes that a reasonable value for front pay and benefits is $295,000.00.

29.     Pursuant to federal law, Gregson also seeks to recover all of her attorney's fees, costs and expenses incurred in prosecuting this case.

Plaintiff has retained the services of undersigned counsel on a 40% contingent fee contract. At the time of trial, or thereafter in the Court's discretion, Plaintiff will present an itemized fee bill seeking compensation at the rate of $350.00 per hour for prosecuting this cause of action. Gregson reasonably anticipates that attorney's fees, costs and expenses incurred in prosecuting this cause of action through the time of trial should be approximately $150,000.00, or more. If an appeal is necessary to the United States Court of Appeals for the Fifth Circuit, Gregson's reasonable and necessary attorney's fees, costs and expenses for handling an appeal should be an additional $35,000.00, conditioned upon success. If it becomes necessary to file a petition for writ of certiorari or to respond to one to the United States Supreme Court, Gregson seeks additional reasonable and necessary attorney's fees, costs and expenses in the amount of $35,000.00, conditioned upon success.

30.  In addition to seeking compensatory damages and attorney's fees, Plaintiff is also seeking the imposition of punitive or exemplary damages upon the Defendant Huntington. In this case, the discrimination against Plaintiff was overt, malicious, intentional, and was done for the specific purpose of violating Gregson's rights protected under federal and state

law. The Defendant Huntington brazenly acted in violation of federal and state statutes, of which the Defendant Huntington was fully aware. Accordingly, Gregson requests that the fact finder impose punitive or exemplary damages upon Huntington to the full extent of the law, for conduct that was malicious, intentional, and done in direct disregard for Plaintiff's right under federal and state statutory law.

PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

31.   Gregson also sues the Defendants Andy Spivey and Ina Cardwell, the two city council members who harassed her, discriminated against her, and conspired to terminate Plaintiff's employment. Plaintiff sues these Defendants under the Texas tort doctrine of tortious interference with business relationships and also defamation per se. Plaintiff also sues these Defendants jointly and severally, for entering into a civil conspiracy to tortiously interfere with her business relationship with Huntington, as part of a conspiracy, and to defame her per se. These individual Defendants had knowledge of, agreed to, and intended an objective course of action that resulted in harm and damages to Gregson. In order to have a civil conspiracy, one of the two Defendants must have actually performed some acts to further the conspiracy. In this case, these city

council members clearly demonstrated that they entered into a conspiracy to harm, harass, and ultimately terminate Gregson's employment. They referred to her as "the old lady," in city council meetings and otherwise during the work day, and they defamed her. These are overt acts in furtherance of their conspiracy. Beginning on February 26, 2013, they maliciously sought to work together to have Gregson fired, to prevent her desire to work for an additional three and one half years, and also to prevent Gregson from vesting for her six (6) months additional benefit of $28,000.00, which such deadline was August 30, 2013. The Defendants continued to act pursuant to their conspiracy, described throughout this Complaint, perpetrating multiple overt actions in furtherance of the conspiracy discussed in full in the factual background. Accordingly, these Defendants acted jointly, as a common enterprise, with a unity of purpose, and Gregson seeks joint and several liability against Cardwell and Spivey for their actions.

32.  The underlying torts for the civil conspiracy are intentional tortious interference with Plaintiff's business relationships and defamation per se. Gregson was employed by Huntington. The individual Defendants decided they wanted to terminate Gregson's employment because of her age, and

also because they wanted to cut down on the available benefits that she would be entitled to receive as a retiree. The actions of the Defendants were intentional, meaning they were committed with a desire to interfere with Gregson's employment with Huntington. Furthermore, the Defendants acted with a belief that their interference was substantially certain to cause Plaintiff's employment with the City of Huntington ultimately to be terminated. These Defendants had no legal privilege for their actions that were deliberately intended to interfere with Gregson's employment.

33. These individual Defendants acted contrary to the best interest of the City of Huntington, and contrary to Gregson's ability to maintain her employment with Huntington. The Defendants, therefore, perpetrated intentional torts against Gregson, tortiously interfering with her employment, defaming her job performance with false allegations and causing Gregson's unlawful termination. Gregson, therefore, seeks to recover all of her damages that are set forth and itemized above, against these individual Defendants, jointly and severally, as well as against Huntington. For purposes of brevity, Gregson will not reiterate the elements of damages that she seeks against these individual Defendants,

but she incorporates all of her damage claims set forth above against these individual Defendants, including all of her claims for compensatory and punitive damages. Plaintiff understands that the Court cannot order the individual Defendants to reinstate Gregson to her former position, but Gregson is entitled to recover not only front pay from the individual Defendants, but also reasonable pay for the remainder of her work life which would have occurred but for the acts of substantial interference and defamation by the individual Defendants. For all such relief and causes of action, the Plaintiff now sues.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer herein. Plaintiff requests that she obtain a Judgment against all Defendants jointly and severally, and that Plaintiff recovers from all Defendants jointly and severally her actual or compensatory damages. Plaintiff requests that she also recover punitive or exemplary damages in the jury's discretion against all Defendants, jointly and severally. Plaintiff also requests that she recovers all her reasonable and necessary attorneys' fees, court costs and expenses. Finally, Plaintiff requests such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

        Respectfully submitted,

        /s/ John S. Morgan
        JOHN S. MORGAN
        TBA#14447475
        Morgan Law Firm
        2175 North Street, Suite 101
        Beaumont, Texas 77701
        (409) 239-5984
        (409) 835-2757 facsimile
        jmorgan@jsmorganlaw.com
        Attorney for Plaintiff

## JURY DEMAND

Plaintiff herein hereby requests a trial by jury.

        /s/ John S. Morgan
        JOHN S. MORGAN